# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ORLANDO CARTER,
    Plaintiff,

    vs.

NATIONAL CITY BANK, et al.,
    Defendants.

Case No. 1:17-cv-508

Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT AND
RECOMMENDATION**

Plaintiff Orlando Carter brings this pro se action against defendant National City Bank, now known as PNC Bank, N.A., alleging state law claims of civil conspiracy, negligence, gross negligence, negligent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, invasion of privacy, breach of contract, and breach of the covenant of good faith and fair dealing, as well as 28 U.S.C. § 2201(a), the Declaratory Judgment Act, and 42 U.S.C. § 1985 and 42 U.S.C. § 1986. (Doc. 4). This matter is before the Court on defendants' motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 22), plaintiff's response in opposition (Doc. 29), and defendants' reply memorandum (Doc. 31). This matter is also before the Court on defendants' motion to strike (Doc. 32), plaintiff's response in opposition (Doc. 33), and defendants' reply memorandum (Doc. 34), as well as plaintiff's motion for judicial notice (Doc. 37). This matter is also before the Court on plaintiff's motion for leave to amend his complaint (Doc. 40), defendants' response in opposition (Doc. 44), and plaintiff's reply memorandum (Doc. 53), as well as plaintiff's motion for leave to supplement his complaint (Doc. 43), defendants' response in opposition (Doc. 50), and plaintiff's reply memorandum (Doc. 54).

## I. Background

In June 2010, the Court sentenced plaintiff to a total of 180 months' imprisonment after a jury found him guilty on 11 fraud-related counts. *See United States v. Carter*, Case No. 1:08-cr-51 (S.D. Ohio Jun. 9, 2010), Doc. 103 at 1-3. Plaintiff remains incarcerated in federal prison in Ashland, Kentucky. (Complaint, Doc. 4 at 67).

Plaintiff filed this civil lawsuit in July 2017 and was granted leave to proceed *in forma pauperis* on August 23, 2017. (Docs. 1, 3, 4). In his sixty-seven-page verified complaint, plaintiff alleges that PNC executives misled the Court to believe that a $4,000,000 debt existed between PNC Bank and the Dynus Corporation, which led to his criminal conviction. (Complaint, Doc. 4 at ¶¶ 1-2). Plaintiff alleges that on November 14, 2016, PNC Executives sent a letter to the Treasury Department stating that the only debt between PNC and Dynus was a $250,000 Note originated in 2003. (*Id.* at ¶ 1). Plaintiff attaches this letter to his complaint as Exhibit E. (Doc. 4-1 at 14). Plaintiff alleges that the letter confirms that PNC executives "1) manufactured and created fake and bogus bank documents to purport the existence of a $4,000,000 debt allegedly owed by [himself] and Dynus; 2) provided fake and bogus PNC Bank documents to the US Attorney; and then 3) walked into a federal courtroom and lied under oath to the authentic existence of the $4,000,000 debt." (Doc. 4 at ¶ 5). Plaintiff asserts that the United States Treasury Department "confirmed on January 30, 2017 that the 'only debt' between Dynus and PNC was a $250,000 Note originated in 2003." (Doc. 4 at ¶ 5). Plaintiff attaches a letter from the Treasury Department as Exhibit B. (Doc. 4-1 at 2).

## II. Motion to Dismiss and Fed. R. Civ. P. 12 Standards

Defendants move to dismiss all counts in plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of standing and for failure to state a claim upon which relief may be granted. (Doc. 22 at 1).

A. Lack of Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), a party may attack a complaint for lack of subject matter jurisdiction. There are generally two types of motions challenging subject matter jurisdiction under Rule 12(b)(1). *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citations omitted). A Rule 12(b)(1) motion can attack a party's claim of jurisdiction on its face or the motion can attack the factual basis for a claim of jurisdiction. *Id*. A facial attack questions the sufficiency of the pleading. *Campbell v. Miller*, 835 F. Supp.2d 458, 463 (S.D. Ohio 2011) (citing *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)). When reviewing this type of challenge to the court's jurisdiction, the court must take the allegations in the complaint as true and construe the complaint in a light most favorable to the non-moving party. *Id*. (citing *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999)).

When a factual challenge is made under Rule 12(b)(1), the court considers evidence to determine if jurisdiction exists. *Campbell*, 835 F. Supp.2d at 463-64 (citing *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003)). The trial court must weigh the conflicting evidence to make this determination. *Id*. (citing *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). When a factual attack is made, the non-moving party bears the burden of proving that jurisdiction exists. *Id*. (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). In such a case, there is no presumption of truthfulness on behalf of the non-moving party. *Id*. (citing *A.D. Roe Co., Inc.*, 186 F.3d at 722).

B. Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), a party may challenge a complaint for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized that the Supreme Court's liberal construction case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

4

## III. Resolution

### A. Plaintiff's Count 2 Civil Conspiracy Claim should be dismissed

Plaintiff alleges in Count II of his complaint that in "conceal[ing] its fake and bogus PNC bank documents which it created to falsely purport the existence of a real and authentic $4,000,000 debtor account . . . PNC maliciously combined with one or more persons or business entities to act with negligent and/or fraudulent intent, to paint [plaintiff] in false light, and to invade his privacy." (Complaint, Doc. 4 at ¶ 160).

Defendants move to dismiss plaintiff's civil conspiracy claim as barred by the applicable statute of limitations in Ohio. (Doc. 22 at 26-27). Under Ohio law, "[t]he tort of civil conspiracy is a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Bradley v. Miller*, 96 F. Supp.3d 753, 767 (S.D. Ohio 2015) (quoting *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998)). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Id.* As such, "the applicable statute of limitations for filing a civil conspiracy [claim] is the relevant limitations statute for the underlying cause of action." *In re Fair Fin. Co.*, 834 F.3d 651, 679 (6th Cir. 2016) (quoting *Davis v. Clark Cty. Bd. of Comm'rs*, 994 N.E.2d 905, 909 (Ohio Ct. App. 2013)).

As it appears from the face of his complaint, plaintiff's civil conspiracy claim is based upon underlying torts of defamation, invasion of privacy, negligence, and fraud. In Ohio, claims for common-law fraud and negligence must be brought within four years after the cause thereof accrued. Ohio Rev. Code § 2305.09(c)-(d). The statute of limitations for a negligence claim begins when the negligent act is committed or when the actual damage or injury results. *Vaughn v. J.C. Penney Co.*, 822 F.2d 605, 610 (6th Cir. 1987). The statute of limitations for fraud

accrues "either when the fraud is discovered, or [when] in the exercise of reasonably diligence, the fraud should have been discovered." *Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1250 (Ohio 2009). Defamation and false light invasion of privacy claims are subject to a one-year statute of limitations under Ohio Rev. Code § 2305.11(a). *Stainbrook v. Ohio Sec'y of State*, 88 N.E.3d 1257, 1265 (Ohio Ct. App. 2017).[1] "[T]he statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Friedler v. Equitable Life Assur. Soc. of U.S.*, 86 F. App'x 50, 53 (6th Cir. 2003) (quoting *Sabouri v. Ohio Dep't of Job & Family Servs.*, 763 N.E.2d 1238, 1240-41 (Ohio 2001)).

Here, plaintiff's claim for civil conspiracy is barred by the statute of limitations under Ohio law for all four of his underlying claims. Plaintiff's criminal trial began in 2009 and plaintiff alleges that PNC executives presented false testimony at the trial about the $4,000,000 debt owed by Dynus Corporation. (Doc. 4 at ¶ 2). Plaintiff also alleges in his complaint that as early as 2005, PNC "falsely claimed that [he] and Dynus had a [$]4,000,000 debt that it had failed to pay." (Doc. 4 at ¶ 38). Plaintiff did not file his complaint in this action until July 2017—well beyond the four-year statute of limitations for negligence and fraud, as well as the one-year statute of limitations for false light invasion of privacy.

Plaintiff responds that PNC's "fraudulent concealment" justifies equitable tolling of the statute of limitations until January 30, 2017, or, in the alternative November 14, 2016. (Doc. 29 at 23-27). The November 14, 2016 date is based on a letter where PNC allegedly conceded during a "government investigation" that the "only debt on file" is a $250,000 Note originated in

---

[1] In 2007, the Supreme Court of Ohio recognized the tort of false-light invasion of privacy as a separate from the tort of defamation. *Welling v. Weinfield*, 866 N.E.2d 1051 (Ohio 2007). Several courts, including the Court in *Stainbrook*, have held that the same one-year statute of limitations for defamation governs claims of false light invasion of privacy as long as the false light claim involves allegations that would also support a defamation claim. Therefore, the Court holds that both underlying claims are subject to Ohio's one-year statute of limitations. For more discussion, see *infra* Section F.

2003. (*Id.* at 27). The January 30, 2017 date represents the "completion of the federal banking investigation by the U.S. Treasury Department." (*Id.* at 26). Plaintiff also argues that equitable tolling is justified because he acted with diligence in "pursuing his rights and uncovering PNC's fraud." (*Id.* at 28). Plaintiff further argues that extraordinary circumstances "stood in his way preventing the timely filing," including that he was "required to overcome the belief of this Court which had been deceived by PNC and federal government law enforcement officials into believing that an authentic $4,000,000 debt existed." (*Id.*). Plaintiff also argues that "he has been transferred within the federal prison system on numerous occasions causing him to be detained in detention centers for extended periods of time without access to evidentiary and legal material to make his claims based on the appropriate state laws." (*Id.* at 29).

In this case, plaintiff has not plausibly alleged that he is entitled to tolling of the statute of limitations based upon fraudulent concealment. "To survive a motion to dismiss on the ground that a claim is time-barred, a plaintiff relying on the doctrine of fraudulent concealment must plausibly plead: (1) the defendant wrongfully concealed its actions; (2) the plaintiff failed to discover the cause of action before the expiration of the limitations period; and (3) plaintiff exercised due diligence." *Burd v. Manley Deas Kochalski PLLC*, No. 2:13-cv-593, 2014 WL 12572908, at *2 (S.D. Ohio Mar. 31, 2014) (citing *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013)). Here, plaintiff has failed to plausibly plead that he did not discover the cause of action before the expiration of the limitations period or that he exercised due diligence. As stated above, plaintiff acknowledges on the face of his complaint that he believed PNC claimed a "false" debt against him as early as 2005 (and he clearly knew about it during his criminal trial in 2009). The Court is unpersuaded that plaintiff did not discover any wrongdoing until an alleged government investigation in November 14, 2016 or January 30,

2017 when he, himself, believed the debt to be "false" for over ten years. The Supreme Court of

Ohio has stated:

> [C]onstructive knowledge of facts, rather than *actual* knowledge of their legal
> significance, is enough to start the statute of limitations running under the
> discovery rule. A plaintiff need not have discovered all the relevant facts
> necessary to file a claim in order to trigger the statute of limitations. Rather, the
> "cognizable event" itself puts the plaintiff on notice to investigate the facts and
> circumstances relevant to her claim in order to pursue her remedies.

*Flowers v. Walker*, 589 N.E.2d 1284, 1287-88 (Ohio 1992) (internal citations omitted). Thus,

the cognizable event triggering the statute of limitations occurred in 2005—the earliest year

when plaintiff alleges he first knew of the $4,000,000 debt—or in 2008 or 2009—the time of his

criminal investigation and subsequent trial. Plaintiff is also not entitled to equitable tolling based

on his confinement because "a prisoner's *pro se* incarcerated status, lack of knowledge regarding

the law, and limited access to the prison's law library or to legal materials do not provide a

sufficient justification to apply equitable tolling of the statute of limitations." *Alls v. Warden,

Belmont Corr. Inst.*, No. 16-cv-1001, 2018 WL 369151, at *3 (S.D. Ohio Jan. 11,

2018), *adopted*, 2018 WL 708378 (S.D. Ohio Feb. 2, 2018).[2] Accordingly, plaintiff's civil

conspiracy claim should be dismissed.

B. Plaintiff's Count 3 Negligence, Count 4 Gross Negligence, and Count 5 Negligent
   Misrepresentation Claims should be dismissed

Plaintiff alleges in his Count 3 negligence claim that PNC "had an affirmative duty

and/or legal obligation to conduct itself in a manner free of negligence and/or wrongdoing

---

[2] Plaintiff's reliance on *Jones v. U.S.*, 689 F.3d 621, 627 (6th Cir. 2012), is not persuasive. As defendants argue, the
facts of *Jones* are distinguishable from this case. The prisoner in *Jones* missed a habeas petition filing deadline by
less than three months. Extraordinary facts justified equitable tolling in *Jones*. Namely, the prisoner was partially
illiterate, suffered from a variety of medical conditions, and did not immediately learn of a Supreme Court case
relating to his claim due to a series of prison transfers that separated him from his legal materials. In this case,
plaintiff has not shown that any extraordinary circumstances exist beyond his status as a pro se prisoner that would
justify equitable tolling in this case. Moreover, as explained *supra*, the statute of limitations for plaintiff's civil
conspiracy claim expired at least 9-12 years ago.

governed by its own internal standard operating procedures . . . and those standards imposed, recognized and generally accepted by and in the banking industry in general as establishing that level of care required of one so situated." (*Id.* at ¶ 164). Defendants argue that plaintiff's negligence claim should be dismissed for lack of duty. (Doc. 22 at 27). Specifically, defendants contend that PNC cannot be held liable for negligence as a matter of law because there is no fiduciary relationship between the parties. (*Id.* at 27-28) (quoting Ohio Rev. Code § 1109.15(E)). Defendants also maintain that plaintiff has not alleged "the existence of a writing between he and PNC in which PNC expressly agreed to a fiduciary relationship." (*Id.* at 28) (citing *Wells Fargo Bank, N.A. v. Perkins*, No. 10AP-1022, 2011 WL 4790766, at *5 (Ohio Ct. App. 2011)).

"To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989). Insofar as plaintiff argues that defendants breached their fiduciary duty to him, "it is well settled that the relationship of a bank and its customer, in the absence of special circumstances, is not a fiduciary relationship, as a bank and its customer ordinarily stand at arm's length." *Baghani v. Charter One Bank F.S.B.*, No. 91373, 2009 WL 280399, at *3 (Ohio Ct. App. 2009) (citing *Groob v. KeyBank*, 843 N.E.2d 1170 (Ohio 2006)). Moreover, as established under Ohio law, "[u]nless otherwise expressly agreed in writing, the relationship between a bank and its obligor, with respect to any extension of credit, is that of a creditor and debtor, and creates no fiduciary or other relationship between the parties." Ohio Rev. Code § 1109.15(E).[3] *See also Groob*, 843 N.E.2d at 1175; *Rennick v. Provident Bank*, No. 1:06-cv-820, 2008 WL 696893, at *8 (S.D. Ohio Mar. 12, 2008).

---

[3] Effective January 1, 2018, this provision is now listed in Ohio Rev. Code § 1109.151.

In this case, plaintiff's negligence claim should be dismissed because he has not pled that a written document created a fiduciary relationship between himself and PNC. Moreover, plaintiff challenges the existence of a $4,000,000 debt between *Dynus* and PNC and alleges that "the only debt" that ever existed between PNC and *Dynus* is a $250,000 Note from 2003. (Doc. 4 at ¶ 1). Plaintiff responds that a fiduciary duty exists by virtue of PNC's allegations in his bankruptcy proceedings when PNC purportedly claimed that it "transferred a significant sum of money on request of Debtor." (Doc. 29 at 29) (citing Exhibit C, Doc. 4-1 at 8). Plaintiff also argues that this Court previously inferred a duty between himself and PNC during his 2009 criminal trial. (*Id.* at 29-30) (citing Complaint, Doc. 4 at ¶ 100). Plaintiff's arguments in response still fail because he has not pled a relationship beyond that of a creditor and debtor. Accordingly, plaintiff has not sufficiently pled that PNC owed him any duty and his negligence claim therefore fails.

In his Count 4 gross negligence claim, plaintiff alleges: "[b]y creating a fake and bogus $4,000,000 account and related fake and bogus documentation to support the same . . . [PNC] is so grossly negligent, malicious and deviated so much from the applicable and acceptable standards that PNC acted in a wanton and reckless manner to the detriment of [plaintiff]." (Complaint at ¶ 170). To establish gross negligence under Ohio law, all elements of negligence must exist. *CBC Engineers & Assocs. Ltd. v. Miller Aviation, LLC*, 880 F. Supp. 2d 883, 887–88 (S.D. Ohio 2012). Because plaintiff has not pled facts alleging that defendants owed him a duty of care, plaintiff's gross negligence claim also fails.

Plaintiff alleges in his Count 5 negligent misrepresentation claim that PNC provided him with "fake and bogus" documents "falsely showing a $4,000,000 debt," which he relied on during his bankruptcy proceedings. (*Id.* at ¶ 175). Plaintiff further alleges: "[b]ut for the

$4,000,000 lie and misrepresentation supplied and made to [plaintiff] by PNC, [plaintiff's] bankruptcy schedules would not have been inaccurate by $4,000,000, and would not have been subsequently and harmfully used against [plaintiff] by federal prosecutors." (*Id.* at ¶ 176). In Ohio, a defendant is liable for negligent misrepresentation when he (1) supplies false information (2) for the guidance of others in their business transactions (3) causing pecuniary loss to the plaintiff (4) while the plaintiff justifiably relied upon the information (5) and the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Doe v. SexSearch.com*, 551 F.3d 412, 418 (6th Cir. 2008) (citing *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989)). "A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction." *Ford v. New Century Mortg. Corp.*, 797 F. Supp.2d 862, 872 (N.D. Ohio 2011) (internal quotation omitted). A debtor-creditor relationship between a bank and its customers "does not give rise to the existence of a duty necessary to maintain a negligent misrepresentation claim." *Id.* at 872-73 (citing *425 Beecher, L.L.C. v. Unizan Bank, Nat'l. Assn.*, 927 N.E.2d 46, 59 (2010)). Here, because of the lack of duty described above, plaintiff also cannot maintain a negligent misrepresentation claim. Accordingly, plaintiff's negligence, gross negligence, and negligent misrepresentation claims should be dismissed.

C. Plaintiff's Count 6 42 U.S.C. § 1985 and Count 7 42 U.S.C. § 1986 Claims should be dismissed

Plaintiff alleges that PNC violated his civil rights under 42 U.S.C. § 1985 by conspiring against him and creating a "fake and bogus $4,000,000 account and fake and bogus bank documents." (Complaint at ¶ 181). Plaintiff alleges that the conspiracy was motivated by racial animus and PNC also "[made] false statements to the FBI regarding a purported $4,000,000 debt

purportedly owed by [him]." (*Id.*). Plaintiff alleges that PNC also violated his rights under 42 U.S.C. § 1986 by neglecting to prevent the conspiracy to deprive him of his civil rights. (*Id.* at ¶ 186).

Defendants moves to dismiss plaintiff's claims under 42 U.S.C. § 1985 and 42 U.S.C. § 1986 as barred by the statute of limitations. (Doc. 22 at 23). Defendants explain that a two-year statute of limitations under Ohio Rev. Code § 2305.11 applies to § 1985 claims and § 1986 expressly outlines a one-year statute of limitations. (*Id.*). Defendants argue that plaintiff's claims accrued no later than his 2009 criminal trial. (*Id.*).

Section 1985 of Title 42 provides a cause of action for conspiracy to deprive individuals of equal protection of the law. *See* 42 U.S.C. § 1985(3). Courts apply the most analogous state statute of limitations to § 1985 claims. *Dotson v. Lane*, 360 F. App'x 617, 620 n.2 (6th Cir. 2010). Thus, the two-year statute of limitations listed in Ohio Rev. Code § 2305.11(A) applies to § 1985 claims brought in Ohio. *Id. See also Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). A cause of action under § 1985 accrues when the plaintiff "knows or has reason to know of the injury that is the basis of his action." *Dotson*, 360 F. App'x at 620 n.2.

Section 1986 of Title 42 creates a cause of action for a knowing failure to prevent wrongful acts pursuant to a conspiracy to interfere with civil rights under § 1985. 42 U.S.C. § 1986. Thus, "[w]here a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990). Section 1986 provides that a claim must be "commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986.

Here, plaintiff's § 1985 claim is time-barred. Plaintiff alleges in his complaint that PNC employees exhibited "racial animus toward [plaintiff] by making false statements to the FBI

regarding a purported $4,000,000 debt." (Complaint at ¶ 181). Thus, the alleged conspiracy would have taken place before his criminal trial in 2009. Plaintiff did not file this action until July 2017—well past the two-year statute of limitations. The Court rejects plaintiff's tolling arguments for the same reasons articulated *supra* in Section A. Moreover, because plaintiff's § 1985 claim should be dismissed as time-barred, plaintiff's § 1986 claim should also be dismissed. *See Braley*, 906 F.2d at 227.[4]

D. Plaintiff's Count 8 Intentional Infliction of Emotional Distress and Count 9 Negligent Infliction of Emotional Distress Claims should be dismissed

Defendants move to dismiss plaintiff's intentional infliction of emotional distress and negligent infliction of emotional distress claims as barred by the statute of limitations. (Doc. 22 at 24). Defendants argue as a second basis for dismissal that these claims are barred by the doctrine of witness immunity as they allege the false testimony of PNC witnesses at the criminal trial as a basis for relief. (*Id.*). Defendants argue as a third basis for dismissal that plaintiff fails to state a claim for relief for both claims. (*Id.* at 32-33).

A claim for intentional infliction of emotional distress must be brought within four years after the cause of action thereof accrued. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 672 (Ohio 1983), *abrogated on other grounds by Welling v. Weinfeld*, 886 N.E.2d 1051 (Ohio 2007). Claims for negligent infliction

---

[4] In any event, plaintiff's § 1985 conspiracy claim would be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that if a judgment rendered in plaintiff's favor would necessarily imply that his conviction or sentence was invalid, the complaint for damages under § 1983 must be dismissed unless the plaintiff has already succeeded in having the conviction or sentence invalidated through reversal on direct appeal, expungement by executive order, or declaration of invalidity by a state tribunal authorized to make such a determination or by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Heck*, 512 U.S. at 486-87. Because success on plaintiff's § 1985 claim would call into question the existence of the $4,000,000 debt and undermine his criminal conviction, plaintiff's claim is barred by *Heck*. *See Lanier v. Bryant*, 332 F.3d 999, 1005-06 (6th Cir. 2003) (extending *Heck* to § 1985 action). Plaintiff's derivative claim under § 1986 would likewise fail to state a claim for relief because there can be no violation of § 1986 without a predicate violation of § 1985. *See Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980).

13

of emotional distress are governed by a two-year statute of limitations. *Lawyers Cooperative Pub. Co. v. Muething*, 603 N.E.2d 969, 975 (Ohio 1992). Claims for infliction of emotional distress accrue when the tort is complete, which is "at the time the injury is incurred and the emotional impact is felt." *Dobrski v. Int'l Union, United Auto., Aerospace & Agr. Implement, Workers of Am.*, No. 1:13-cv-1439, 2013 WL 3458221, at *4 (N.D. Ohio July 9, 2013) (quoting *Biro v. Hartman Funeral Home*, 669 N.E.2d 65 (Ohio Ct. App. 1995)).

Plaintiff's emotional distress claims are time-barred. Plaintiff alleges in his intentional infliction of emotional distress claim that PNC's conduct was "extreme and outrageous when it created a fake $4,000,000 account and then lied to the FBI and US Attorney when it claimed the $4,000,000 was real and authentic and $4,000,000 was owed by [plaintiff] to PNC." (Complaint at ¶ 191). Plaintiff alleges in his negligent infliction of emotional distress claim that PNC's "conduct, by creating a fake $4,000,000 account, by lying to the FBI on [plaintiff] when it claimed the $4,000,000 account was real and authentic . . . and by falsely testifying in this court . . . led to [plaintiff's] indictment, prosecution, and wrongful incarceration in a federal prison which [plaintiff] was placed in real physical danger as a result of daily fights in a prison environment." (*Id.* at ¶ 196). The allegations in plaintiff's complaint demonstrate that defendants inflicted emotional distress before and during the time of criminal trial in 2009. Thus, the statute of limitations for plaintiff's negligent infliction of emotional distress claim expired in 2011 and the statute of limitations for plaintiff's intentional infliction of emotional distress claim expired in 2013. The Court rejects plaintiff's tolling arguments for the same reasons articulated *supra* in Section A. Accordingly, plaintiff's claims for negligent infliction of emotional distress and intentional infliction of emotional distress should be dismissed as barred

by the statute of limitations, and the Court need not reach defendants' alternate grounds for dismissal.

E. Plaintiff's Count 10 Fraud Claim should be dismissed

Defendants move to dismiss plaintiff's fraud claim for lack of standing because CBST Acquisition,[5] not plaintiff, is the borrower on the loan. (Doc. 22 at 13). Defendants argue as a separate basis for dismissal that plaintiff cannot state a claim for fraud because he fails to meet the heightened pleading standard under Fed. R. Civ. P. 9(b). (*Id.* at 30-31). Defendants maintain that plaintiff's complaint neither identifies the time or place where PNC allegedly misrepresented a $4,000,000 loan to him, nor does it identify the result of the fraud. (*Id.* at 31).

Plaintiff responds in opposition that his complaint meets the Rule 9(b) standard. (Doc. 29 at 32-33). He argues that he has standing to assert a claim of fraud because PNC represented itself as a creditor during his bankruptcy proceeding. (*Id.* at 17).

To state a claim for fraud under Ohio law, a plaintiff must allege: (1) representation, or when there is a duty to disclose, concealment of fact, (2) which is material to the transaction at hand, (3) made falsely with knowledge of falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000) (citing *Burr v. Bd. of Cnty. Comm'rs*, 491 N.E.2d 1101, 1105 (Ohio 1986)). A party alleging fraud must plead "with particularity the circumstances constituting fraud or mistake." *W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp.3d 888, 899-900 (S.D. Ohio 2014) (quoting Fed. R. Civ. P. 9(b)). This requires specifying:

---

[5] CBST Acquisition is a subsidiary of Dynus Corporation. (Doc. 22 at 9, Doc. 4 at ¶ 39).

"1) what the fraudulent statements were, 2) who made them, 3) when and where the statements were made, and 4) why the statements were fraudulent." *Id.* (quoting *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x. 558, 562 (6th Cir. 2013)).

Plaintiff alleges in his Count 10 fraud claim:

> PNC provided information and documents showing a $4,000,000 debt and demand for the same rather than the $250,000 Note [plaintiff] signed and originated in 2003. PNC, as shown in paragraph 115, acknowledged it had change [sic] the principal amount of the loan to $4,000,000. [Plaintiff], to his detriment, relied on the information provided and the representation PNC made regarding a $4,000,000 debt during his bankruptcy proceeding.

(Complaint at ¶ 201). Plaintiff's complaint proceeds to allege that PNC confirmed its misrepresentation and fraud in the November 14, 2016 letter to the U.S. Treasury Department described above. (*Id.* at ¶ 202).

Plaintiff's amended complaint fails to meet Rule 9(b)'s heightened pleading standard for fraud. The complaint fails to allege specific facts supporting allegations that defendants fraudulently changed the amount of the $250,000 note. Plaintiff's complaint fails to allege the bare minimum "who, what, when, where, and how" of the alleged fraud. *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted). Moreover, plaintiff has offered no plausible facts demonstrating that defendants acted with the intent to deceive. *See Schwartz v. Bank One, Portsmouth, N.A.*, 619 N.E.2d 10, 12 (Ohio Ct. App. 1992) ("[A] cause of action cannot be classified a tort action simply because the appellant used the term 'fraudulently' in [the] pleading."). Accordingly, plaintiff's fraud claim should be dismissed for failure to state a claim for relief, and the Court need not reach defendants' alternative standing argument.

## F. Plaintiff's Count 11, 12, and 13 Invasion of Privacy Claims should be dismissed

Defendants move to dismiss plaintiff's invasion of privacy claims as barred by the applicable statute of limitations. (Doc. 22 at 24-26). There are four theories of invasion of

privacy in Ohio: (1) an unreasonable intrusion upon the other's right of seclusion, (2)

misappropriation of another's name or likeness, (3) unreasonable publicity given to another's

private affairs, and (4) representing an individual in a "false light." *Seifer v. PHE, Inc.*, 196 F.

Supp.2d 622, 630 (S.D. Ohio 2002). The four-year statute of limitations provided in Ohio Rev.

Code § 2305.09(D) applies to invasion of privacy claims. *Smith v. A.B. Bonded Locksmith, Inc.*,

757 N.E.2d 1242, 1249 (Ohio. Ct. App. 2001). However, the one-year statute of limitations for

defamation claims applies to claims for false light where the allegations involved "would support

*both* defamation and false-light invasion of privacy" because "every defamation claim can be

cast as a false-light invasion of privacy claim." *Murray*, 2015 WL 5626509, at *4. *See also*

*Stout v. FedEx Ground Package Sys., Inc.*, No. 3:14-cv-02169, 2015 WL 7259795, at *2-3 (N.D.

Ohio Nov. 17, 2015); *Stainbrook*, 88 N.E.3d at 1265. "[T]he statute of limitations begins to run

when the allegedly defamatory words are first spoken or published regardless of the aggrieved

party's knowledge of them." *Friedler v. Equitable Life Assur. Soc. of U.S.*, 86 F. App'x 50, 53

(6th Cir. 2003) (quoting *Sabouri v. Ohio Dep't of Job & Family Servs.*, 763 N.E.2d 1238, 1240-

41 (Ohio 2001)).

Plaintiff's intrusion upon seclusion and misappropriation claims are barred by Ohio's

four-year statute of limitations. Plaintiff alleges in his intrusion upon seclusion claim that

defendants violated his reasonable expectation of privacy and "intentionally intruded [his]

solitude, seclusion, his private affairs and/or concerns when PNC created a fake $4,000,000

account and publicly and falsely claimed that [plaintiff] and his private company, Dynus, was a

debtor on the account." (Complaint at ¶ 208). In his misappropriation claim, plaintiff alleges

that defendants misappropriated his "name, likeness and/or persona" by inappropriately attaching

his name to a fake $4,000,000 account. (Complaint at ¶ 217). Both allegations arise from events

that occurred before and during his criminal trial in 2009. Thus, the statute of limitations for these claims would have expired in 2013. Plaintiff did not file his complaint in this action until July 2017—well beyond the four-year statute of limitations for intrusion upon seclusion and misappropriation. The Court again rejects plaintiff's tolling arguments for the same reasons articulated *supra* in Section A.

Plaintiff's false light claim is also time-barred. Plaintiff alleges that PNC painted him in a false light by claiming that he failed to pay a $4,000,000 debt and communicating this information to the FBI and to the public via the testimony its employees gave during his criminal trial. (Complaint at ¶ 212). In Ohio, a defendant is liable for false-light invasion of privacy when he gives publicity to a matter concerning another that places the other before the public in a false light, which is highly offensive to a reasonable person and the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter. *Stout*, 2015 WL 7259795, at *2 (quoting *Welling*, 866 N.E.2d at 1054)). Likewise, defamation is "a false publication 'causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame, or disgrace, or affecting him adversely in his trade or business.'" *Id.* (quoting *Matalka v. Lagemann*, 486 N.E.2d 1220, 1222 (Ohio 1985)). Plaintiff's false light allegations likewise arise from events that occurred before and during his criminal trial in 2009. Thus, the statute of limitations expired in either 2010 or 2013.[6] The Court again rejects plaintiff's equitable tolling arguments for the same reasons articulated in *supra* Section A. Accordingly, all three of plaintiff's invasion of privacy claims should be dismissed.

G. Plaintiff's Count 14 Breach of Contract and Count 15 Breach of the Covenant of Good Faith and Fair Dealing Claims should be dismissed

---

[6] It is unnecessary for the Court to decide whether plaintiff's false light claim is akin to a defamation claim such that it would be subject to a one-year statute of limitations rather than the four-year statute of limitations provided in Ohio Rev. Code § 2305.09(D). Either way, plaintiff's false light claim is time-barred.

Defendants move to dismiss plaintiff's breach of contract claim and breach of the covenant of good faith and fair dealing for lack of standing. (Doc 22 at 14-15). Defendants argue that the parties to the loan are CBST Acquisition and The Provident Bank. (*Id.* at 14). Defendants further argue that even if PNC had acquired the loan in question, plaintiff admits he is not a borrower to the loan and thus lacks standing to assert a claim for breach of contract. (*Id.*) (citing Complaint at 1, 2, 6-7, 11-13, 21-22, 27). Defendants argue that since plaintiff lacks standing to assert a breach of contract claim, he cannot bring a claim for the breach of covenant of good faith and fair dealing because such a claim does not stand alone as a separate cause of action from a breach of contract claim. (*Id.* at 15). Alternatively, defendants assert as a basis for dismissal that plaintiff cannot state a claim for breach of contract under Ohio law because he fails to allege that he performed his contractual obligations and fails to allege the terms of the loan beyond identifying it by the date and principal amount borrowed. (*Id.* at 29).

Plaintiff responds that he has standing to assert a breach of contract claim because "PNC claims, albeit falsely, that it acted at [his] direction regarding the purported loan." (Doc. 29 at 11). Plaintiff argues that because PNC entered an appearance as a creditor in his bankruptcy proceeding, it has confirmed that a contract exists between the parties. (*Id.* at 12). Plaintiff also maintains that he sufficiently pled that "PNC breached the contract without his consent, causing him to suffer damages." (*Id.* at 31).

In order to state a claim for breach of contract in Ohio, a plaintiff must allege: "(1) a binding contract or agreement was formed, (2) the nonbreaching party performed its contractual obligations, (3) the other party failed to fulfill its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages as a result of the breach." *Carbone v. Nueva Constr. Grp., L.L.C.*, 83 N.E.3d 375, 380 (Ohio Ct. App. 2017). In order to survive a motion to

dismiss, a party asserting a breach of contract claim must identify and present the actual terms of the contract allegedly breached. *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012). Moreover, only a party to a contract or an intended third-party beneficiary of a contract may bring an action for breach of contract. *Grant Thornton v. Windsor House, Inc.*, 566 N.E.2d 1220, 1223 (Ohio 1991). "It is axiomatic that the plaintiff must show that the defendant was a party to the contract before proceeding on a breach of contract theory." *Ohio Nat'l Life Assurance Corp. v. Crescent Fin. & Ins. Agency, Inc.*, No. 1:15-cv-727, 2016 WL 659153, at *2 (S.D. Ohio Feb. 18, 2016) (quoting *Jackson v. Sunnyside Toyota, Inc.*, 887 N.E.2d 370, 376 (Ohio Ct. App. 2008)).

In his breach of contract claim, plaintiff alleges that in 2003, he signed a contract with PNC for a loan in the principal amount of $250,000. (Complaint at ¶ 144, Ex. K). Plaintiff alleges that PNC breached this contract by changing the principal amount from $250,000 to $4,000,000. (*Id.* at ¶ 145). Elsewhere throughout his complaint, plaintiff challenges the existence of the $4,000,000 contractual loan between CBST/Dynus Corporation and PNC. (*See* Complaint, Doc. 4). Exhibit K, which plaintiff attaches to his complaint, is a loan document "made and entered into" by CBST Acquisition, LLC and The Provident Bank. (Exhibit K, Doc. 4-1 at 24). PNC alleges that neither PNC nor plaintiff is a party to the loan and plaintiff has not sufficiently alleged privity of contract between the parties to bring a claim for breach of contract.

In Ohio, "privity of contract between parties . . . is a fundamental prerequisite to bringing suit for the breach of a contract." *Mark-It Place Foods, Inc. v. New Plan Excel Realty Tr.*, 804 N.E.2d 979, 990 (Ohio Ct. App. 2004). *See also Cincinnati, H. & D. R. Co. v. Metro. Nat. Bank*, 42 N.E. 700 (1896). Here, Exhibit K shows the existence of a contract between CBST Acquisition, LLC and The Provident Bank. Even assuming PNC acquired the loan from The

Provident Bank, plaintiff is not a party to the contract. Although plaintiff signed the loan document, he did so in his capacity as CBST's president. However, "a corporation is a distinct legal entity, separate and apart from the natural individuals who formed and own it." *Chafflose Corp. v. 3 M Innovation*, No. 1:10-cv-2178, 2010 WL 4318872, at *1 (N.D. Ohio Oct. 27, 2010) (citations omitted). "Because a corporation is a separate entity from its directors and officers, causes of action belonging to the corporation may not be litigated by the officers for their own benefit." *Id.* As such, plaintiff lacks standing to assert a claim for breach of contract on behalf of CBST.

Plaintiff has also not identified any facts supporting allegations that defendants breached any purported contract by changing the amount owed. Plaintiff cannot rely on mere legal conclusions or speculation without any supporting factual allegations to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 677. For these reasons, plaintiff's breach of contract claim should be dismissed.

In addition, plaintiff's claim for a breach of the covenant of good faith and fair dealing should be dismissed. Ohio does not recognize a separate claim for the breach of the covenant of good faith and fair dealing. *McGrath v. Nationwide Mut. Ins. Co.*, 295 F. Supp.3d 796, 808 (S.D. Ohio 2018) (citing *Frisch v. Nationwide Mut. Ins. Co.*, 553 F. App'x 477, 482 (6th Cir. 2014) (although Ohio law recognizes the existence of an implied duty of good faith and fair dealing in every contract, "the duty does not create an independent basis for a cause of action.") (internal citations omitted)). Therefore, because plaintiff lacks standing and has failed to state a claim for breach of contract, his claim for breach of the covenant of good faith and fair dealing likewise fails. Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing should be dismissed.

H. Plaintiff's Count 1 Declaratory Judgment Act Claim should be dismissed

Plaintiff also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28

U.S.C. § 2201(a), against defendants "regarding [the] purported $4,000,000 debt purportedly

owed by [plaintiff] and/or Dynus." (Complaint at ¶ 152). The Declaratory Judgment Act "does

not create an independent basis for federal subject matter jurisdiction." *Heydon v. MediaOne of

Se. Michigan, Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) (*citing Skelly Oil Co. v. Phillips Petroleum

Co.*, 339 U.S. 667, 671-72 (1950)). The Declaratory Judgment Act "only provides courts with

discretion to fashion a remedy." *Id.* "Thus, before invoking the Act, the court must have

jurisdiction already." *Id.* Here, the Court lacks jurisdiction to consider plaintiff's claim for

declaratory relief because it has recommended that all independent causes of action be dismissed.

Accordingly, plaintiff's claim under the Declaratory Judgment Act should be dismissed.

**IV. Plaintiff's Motion to Amend and Motion to Supplement (Docs. 40, 43) should be denied**

On April 27, 2018, plaintiff filed a motion to amend. (Doc. 40). Plaintiff argues that he

recently "learned the existence of additional facts and evidence that warrant the assertion of

additional causes of action or theories of relief." (*Id.* at 1). Plaintiff alleges that he learned of

additional facts in a related judicial proceeding, *Carter v. U.S.A.*, No. 1:17-cv-248. (*Id.* at 3).[7]

Plaintiff seeks to add claims of fraudulent concealment, race discrimination in violation of 42

U.S.C. § 1981, and tortious spoliation of evidence, as well as relief in the form of a preliminary

injunction and permanent injunction. (*Id.* at 19-22).

On June 7, 2018, plaintiff filed a motion for leave to supplement his amended complaint.

(Doc. 43). Plaintiff alleges that he recently learned of the existence of additional facts and

---

[7] In the parallel proceeding, plaintiff claims that U.S. Attorney Glassman "conceded that no such $4,000,000 debt ever existed," which "confirms that Defendants created a fraudulent, fake, and bogus $4,000,000 debtor account, and took active and affirmative steps to fraudulently conceal the same." (Doc. 40 at 8).

evidence during bankruptcy proceedings, specifically that defendants "now claim he owes $8,810.805.65." (*Id.* at 1). Plaintiff seeks to supplement his complaint with additional claims of negligence, fraud, and breach of contract, and he seeks declaratory relief, as well as preliminary and permanent injunctions. (*Id.* at 7-9).

The Federal Rules provide that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "A district court has discretion in determining whether justice requires that [an] amendment be allowed." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 522 (6th Cir. 1999) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). Factors relevant to the Court's decision include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). A plaintiff should not be granted leave to amend the complaint when the proposed amendment would be futile. *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (in deciding whether to grant leave to amend, the Court should consider futility of amendment). The test for futility is whether the amended complaint could survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

Plaintiff's motion to amend should be denied as futile. First, plaintiff has failed to plead the essential elements of a claim for fraudulent concealment, which requires: (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard or recklessness as to whether it is true or false that knowledge may be inferred, (4) with

the intent of misleading another into relying upon it, (5) justifiable reliance upon the

representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987). Plaintiff fails to allege

plausible facts beyond the level of speculation to meet these elements. Second, plaintiff's

proposed claim under 42 U.S.C. § 1981 is barred by the two-year statute of limitations for claims

brought in Ohio. *See Thompson v. Cuyahoga Cty. Sheriff's Dep't*, No. 1:17-cv-00126, 2017 WL

1882129, at *2 (N.D. Ohio May 9, 2017) (Ohio's two-year statute of limitations for bodily injury

applies to §1981 claims). Third, plaintiff fails to state a claim for tortious spoliation of evidence,

which requires alleging: "(1) pending or probable litigation involving the plaintiff, (2)

knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of

evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's

case, and (5) damages proximately caused by the defendant's acts [.]" *Smith v. Howard Johnson*

*Co., Inc.*, 615 N.E.2d 1037 (Ohio 1993). Other than using buzz word adjectives throughout his

proposed amended complaint, such as "willful", "malicious," and "egregious," plaintiff has

failed to plausibly allege facts showing knowledge or willful destruction of evidence on part of

defendants. Accordingly, plaintiff's motion to amend (Doc. 40) should be denied.

Plaintiff's motion to file a supplemental complaint should also be denied. Plaintiff's

proposed supplemental complaint alleges that defendants filed a $8,810.805.65 fake and false

claim against him during the course of his bankruptcy proceedings. Plaintiff's proposed

supplemental complaint reiterates the substance of his negligence, fraud, and breach of contract

claims from his original complaint, which the Court recommended be dismissed. (*See* Doc. 43-1

at 7-8). For the reasons stated above, it would be futile to allow plaintiff to supplement his

complaint with claims of negligence, fraud, and breach of contract. Moreover, plaintiff's

supplemental complaint seeks to bring claims of negligence, fraud, and breach of contract based on allegedly fraudulent filings in *bankruptcy* court. Plaintiff fails to allege how these fraudulent filings are sufficiently related to the $4,000,000 debt from his *criminal* conviction that forms the basis of his original complaint. *See Dean v. Brandon*, No. 97-6201, 1998 WL 552683, at *1 (6th Cir. Aug. 13, 1998) (holding that district court did not abuse its discretion when it denied motion to amend because plaintiff's "proposed claims were simply not related to his original claims"). Accordingly, plaintiff's motion for leave to file a supplemental complaint (Doc. 43) should also be denied.

## V. All remaining motions are denied as moot (Docs. 32 and 37)

Defendants move to strike the affidavit attached to plaintiff's brief in opposition to defendants' motion to dismiss because it was not referenced in his complaint. (Doc. 32). Plaintiff moves the Court to take judicial notice of a purported $4,000,000 debt between PNC Bank and CBST Acquisition, LLC. (Doc. 37). As the Court has determined that all of plaintiff's claims should be dismissed and plaintiff's motion to amend and supplement his complaint be denied, the Court need not consider these motions. The Court **DENIES** as moot defendants' motion to strike (Doc. 32) and plaintiff's motion for judicial notice (Doc. 37).

## VI. Conclusion

**Based on the foregoing reasons, it is RECOMMENDED that:**

1. Defendants' motion to dismiss (Doc. 22) be **GRANTED**.

2. Plaintiff's motion to amend (Doc. 40) be **DENIED**.

3. Plaintiff's motion to file a supplemental complaint (Doc. 43) be **DENIED**.

4. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

It is **ORDERED** that

1. Defendants' motion to strike (Doc. 32) is **DENIED as MOOT**.

2. Plaintiff's motion for judicial notice (Doc. 37) is **DENIED as MOOT**.

Date: 7/23/18

Karen L. Litkovitz
United States Magistrate Judge

ORLANDO CARTER,
    Plaintiff,

Case No: 1:17-cv-508

Dlott, J.

Litkovitz, M.J.

vs.

NATIONAL CITY BANK, et al.,
    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).